J-S69009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GENE PETERS | |
| Appellant | No. 2498 EDA 2013 |

Appeal from the Judgment of Sentence August 5, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006342-2011

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED DECEMBER 02, 2014**

Appellant, Gene Peters, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his stipulated bench trial conviction for involuntary deviate sexual intercourse (child under 16 years of age) ("IDSI").[1] We affirm Appellant's conviction but vacate and remand for resentencing.

In its opinions, the trial court set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises one issue for our review:

---

[1] 18 Pa.C.S.A. § 3123(a)(7).

> WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS STATEMENTS BECAUSE APPELLANT'S WAIVER OF **MIRANDA**[2] RIGHTS WAS NOT THE RESULT OF A FREE AND DELIBERATE CHOICE OF APPELLANT?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Thomas C. Branca, we conclude Appellant's issue merits no relief. The trial court opinions comprehensively discuss and properly dispose of the question presented. (**See** Trial Court Opinion, filed March 7, 2014, at 5-10; Suppression Court Opinion, filed May 24, 2012, at 4-6) (finding: ten and one-half hour delay between Appellant's arrest and Appellant's statement to police was not aimed to overcome Appellant's will; Detective Angelucci is only sex crimes detective in Norristown Police Department and had to attend to other matters on morning of Appellant's arrest, before speaking with Appellant; Appellant admitted he slept virtually entire time he was in custody; detective offered Appellant food and drink during interview, and Appellant waived **Miranda** warnings and gave voluntary statement to police; during period Appellant was in custody he had access to toilet and water fountain; record fails to show Appellant suffered from any adverse physical condition while in custody; Detective Angelucci testified credibly that

_____

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant appeared calm, alert, and coherent during interview; detective's discussion with Appellant about getting treatment merely reflected detective's attitude that Appellant needed help and was not meant to coerce Appellant to make statement; Detective Angelucci made no promises in exchange for Appellant's statement; record belies Appellant's claim that he was intoxicated during interview; court properly denied suppression motion where Appellant's waiver of *Miranda* rights was knowing, voluntary and intelligent). Accordingly, we affirm the court's denial of Appellant's suppression motion on the basis of the trial court's opinions.

Nevertheless, we are mindful of the United States Supreme Court's decision in *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), in which the Court expressly held that any fact increasing the mandatory minimum sentence for a crime is considered an element of the crime to be submitted to the fact-finder and found beyond a reasonable doubt. *Id.* Here, the court imposed the mandatory minimum sentence under a former version of 42 Pa.C.S.A. § 9718 (governing sentences for offenses against infant persons) for Appellant's IDSI conviction. Consequently, we elect to review the legality of Appellant's sentence *sua sponte*. *See Commonwealth v. Edrington*, 780 A.2d 721 (Pa.Super. 2001) (explaining challenge to application of mandatory minimum sentence is non-waiveable challenge to legality of sentence, which this Court can raise *sua sponte*, assuming jurisdiction is proper).

Section 9718(a)(1) sets forth a mandatory minimum sentence of ten (10) years' imprisonment where a defendant is convicted of IDSI involving a victim under sixteen (16) years of age. *See* 42 Pa.C.S.A. § 9718(a)(1) (effective January 1, 2007 to August 17, 2014). Section 9718(c) of this statute states that its provisions shall not be an element of the crime and applicability of the statute shall be determined by the court at sentencing by a preponderance of the evidence. 42 Pa.C.S.A. § 9718(c).[3]

Recently, in *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*), this Court addressed the constitutionality of a mandatory minimum sentencing statute containing language similar to Section 9718(c). This Court analyzed whether Newman's mandatory minimum sentence was constitutional in light of the United States Supreme Court's decision in *Alleyne, supra*. Relying on *Alleyne*, *Newman* held that Section 9712.1 can no longer pass constitutional muster as it "permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence that the defendant was dealing drugs and possessed a firearm, or that a firearm was in close proximity to the drugs." *Newman, supra* at 98. Thus, this Court vacated Newman's PWID sentence and remanded for resentencing without imposition of the

---

[3] The current version of Section 9718 contains the same mandatory minimum sentence for Appellant's crime and the same language contained in Section 9718(c). *See* 42 Pa.C.S.A. § 9718 (effective August 18, 2014).

- 4 -

mandatory minimum under Section 9712.1.[4] ***See also Commonwealth v. Valentine***, ___ A.3d ___, 2014 PA Super 220 (filed October 3, 2014) (involving appeal of sentence arising from jury trial; extending logic of ***Alleyne*** and ***Newman*** to Sections 9712 and 9713 and holding those sections are likewise unconstitutional insofar as they permit automatic increase of defendant's sentence based on preponderance of evidence standard).

Here, the court found Appellant guilty of IDSI of a child less than 16 years per 18 Pa.C.S.A. § 3123(a)(7), following a stipulated bench trial. The record indicates Appellant proceeded to a stipulated bench trial to preserve his suppression challenge for appellate review. (***See*** N.T. Stipulated Bench Trial, 10/16/12, at 7-8.) The Commonwealth agreed to withdraw another charge in the case and to seek no more than the mandatory minimum under Section 9718. (***See id.*** at 11-12.)[5] Appellant made clear he was stipulating that the Commonwealth's presentation of the victim's testimony was consistent with what the victim would say if called to testify; Appellant did **not** stipulate that the Commonwealth's presentation of evidence was true.

---

[4] This Court also made clear that ***Alleyne*** is subject to limited retroactivity; in other words, ***Alleyne*** is applicable to all criminal cases still pending on direct review. ***Id.*** at 90. Because Newman's case was still pending on direct appeal, the holding in ***Alleyne*** applied to Newman's case.

[5] The Commonwealth ultimately withdrew all charges in the criminal information except the IDSI charge.

(*Id.*)

Following the court's conclusion that Appellant's decision to waive a jury trial and proceed to a stipulated bench trial was knowing, intelligent, and voluntary, the Commonwealth presented, *inter alia*, the following evidence: if the case proceeded to a traditional bench or jury trial, the Commonwealth would call the victim to testify; the victim is eleven years old and was nine years old at the time of the offense; on August 8, 2011, Appellant was staying in the victim's home for the night as a guest of the victim's mother; in the early morning hours of that day, the victim was lying on the floor of the living room and fell asleep next to Appellant; Appellant anally penetrated the victim; the Commonwealth would also call Detective Angelucci as a witness, who would testify consistent with his testimony at the suppression hearing. The Commonwealth also admitted into evidence Appellant's written waiver of **Miranda** rights and Appellant's statement to police. Following closing arguments, the court convicted Appellant of IDSI of a child less than 16 years.

Notably, Appellant did not dispute the victim's age. Further, nothing in **Alleyne** suggests it applies to a stipulated bench trial where the Commonwealth presented evidence of the fact which triggered imposition of the mandatory minimum (the victim's age), and the court expressly convicted Appellant under a statute which contains that same fact as an element of the crime. **See** 18 Pa.C.S.A. § 3123(a)(7). **See also Alleyne,**

*supra*. Nevertheless, based on Appellant's **qualified** stipulation and in an abundance of caution, given this Court's decisions in **Newman** and **Valentine**, we vacate and remand for resentencing.[6] Accordingly, we affirm Appellant's conviction, but we vacate the judgment of sentence and remand for resentencing without imposition of a mandatory minimum sentence.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2014

_____

[6] In **Commonwealth v. Matteson**, 96 A.3d 1064 (Pa.Super. 2014), this Court upheld imposition of the mandatory minimum sentence under Section 9718 for the defendant's aggravated indecent assault of a child conviction following a jury trial. **See id.** (explaining Sixth Amendment concerns present in **Alleyne** are not implicated where Commonwealth charged defendant with aggravated indecent assault of child which requires that victim is less than 13 years of age, and victim testified she was 11 years old at time of incident; therefore, jury specifically found beyond reasonable doubt element required to impose mandatory minimum sentence under Section 9718). This Court in **Valentine** expressly considered **Matteson** when ruling and nevertheless adhered to this Court's *en banc* decision in **Newman** (decided after **Matteson**). **See Valentine, supra** at *9 n.4. We reach the same decision here.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA:      NO. 6342-11
         :      EDA 2013
     v.          :
         :
     GENE PETERS          :

## OPINION OF THE COURT

Branca, J.          March 7, 2014

### I.    INTRODUCTION

Defendant, Gene Peters, appeals to the Superior Court from the judgment of

sentence imposed by this Court on August 5, 2013. Defendant's sole claim on appeal is

that this Court erred in denying his Motion to Suppress. For the reasons that follow,

Defendant's appeal is without merit.

### II.    STATEMENT OF THE CASE

#### A.    Factual History[1]

1. On August 8, 2011 at approximately 3:00 am, Norristown Police received a report of a sexual assault upon a nine (9) year old girl at 928 W. Marshall St.

2. Based on information provided by the victim at the scene, the victim's uncle, Defendant Gene Peters ("Peters") was taken into custody at 3:23 am.

3. Defendant was held in a holding cell at the Norristown Police Department which cell had bathroom facilities and a water fountain. [N.T. 5/14/12, at 37-38].

4. At approximately 7:00 am on that date, Detective James Angelucci ("Det. Angelucci") arrived at the Police Station. Det. Angelucci is the only detective in the Norristown Police Department assigned to sex

---

[1] In denying Defendant's Motion to Suppress, the Court set forth Findings of Fact which are set forth verbatim herein. These facts were elicited at a hearing before the Court on May 14, 2012.



crimes. His first task that day was to attend a Mission Kids' session.[2] Thereafter, he turned his attention to revising the Probable Cause Affidavit in the instant case. He was also told by Data personnel (those who check prisoners in cells) that Defendant wanted to discuss his situation with the police. [N.T. 5/14/12, at 6, 22, 30-47].

5. At approximately 1:40 pm, Det. Angelucci brought Peters to his office based on Peters's request to speak with the police of his situation. Peters was in handcuffs and shackles for the walk from the cell to the office. Once in the office, the handcuffs were removed from Peters, though he remained in the shackles. [N.T. 5/14/12, at 6-10].

6. According to his own testimony, Peters slept virtually the entire time he was in the holding cell prior to his meeting with Det. Angelucci. [N.T. 5/14/12, at 48].

7. Moreover, while Peters testified he was given nothing to eat, Det. Angelucci testified that the Norristown Police Department policy was to give prisoners held for more than eight (8) hours something to eat. Det. Angelucci testified that he offered Peters something to eat and drink during the course of taking Peters's statement. [N.T. 5/14/12, at 20-21, 37, 43-44, 54-55].

8. Peters was given his Miranda Warnings prior to any substantive discussions or questioning. Those warnings were in writing, signed by Peters, and admitted as Commonwealth Exhibit #1. As explained by Det. Angelucci, he told Peters, and wrote on the form, that he wanted to talk to Peters about an alleged sexual assault at Peters' home at 928 W. Marshall St. Det. Angelucci followed his set procedure by reading aloud to Peters the sentence enumerated no. 1 on the form, advising Peters of "my right to remain silent and that anything can and will be used against me in a court of law." Det. Angelucci then asked Peters to read it aloud back to Det. Angelucci, so he could assure himself that Peters could read. [N.T. 5/14/12, at 10-13].

9. After Peters read no. 1 from the form, Det. Angelucci told Peters to read to himself the remainder of the form which Peters appeared to do, at which point Peters wrote 'yes' on the form in response to the questions inquiring both whether Peters understood his Constitutional Rights and knowing them, was willing to give a voluntary statement at 1:43 pm. [N.T. 5/14/12, at 14-15].

10. In addition to Det. Angelucci, Sergeant Crescitelli ("Sgt Crescitelli") was also present when Peters was given his Miranda

---

[2] While not testified to, this Court is aware that a Mission Kids' interview is the process by which a minor reports his or her alleged sexual abuse.

Warnings. Det. Angelucci and Sgt Crescitelli witnessed Peters's signature to his waiver of Miranda Warnings. [N.T. 5/14/12, at 10-15].

11. At the hearing, Peters acknowledged that he was given his Miranda Warnings and signed the form to signify that he understood his rights and was willing to give a statement. [N.T. 5/14/12, at 15, 58-62].

12. Upon completion of the waiver of his Miranda Rights, Peters and Det. Angelucci had a discussion about the early morning events that transpired with the minor child L.M. Thereafter, Det. Angelucci proceeded to a question and answer session which he contemporaneously memorialized on his computer. The statement in which Peters admits to sexually assaulting L.M. was introduced as Commonwealth's Exhibit #2. It is this statement that Peters seeks to suppress. [N.T. 5/14/12, at 15-62].

13. Peters did not deny giving the statement or the accuracy of the statement, but asserted that he was high, having smoked marijuana and PCP most of the day before he was arrested, and that he was promised leniency and treatment for his sexual addictions if he gave a statement. [N.T. 5/14/12, at 49-62].

14. Contrary to Peters's testimony, however, Det. Angelucci, who has extensive experience with individuals under the influence of drugs, testified that Peters did not appear to be under the influence of drugs or alcohol. And while he would characterize Peters as embarrassed, Peters remained calm the entire time they were together. Det. Angelucci discussed with Peters, who was recently paroled on a sexual assault case, the need for treatment for sexual addiction. Furthermore, Det. Angelucci made no promises or threats to induce Peters to give a statement. [N.T. 5/14/12, at 19-62].

15. This Court finds Det. Angelucci to be credible in all aspects of his testimony and Peters not credible to the limited extent Peters' testimony contradicts that of Det. Angelucci.

16. The time that elapsed between Peters's arrest and confession was approximately 10½ hours, during which Peters was not arraigned. [N.T. 5/14/12, at 26].

17. But the span of time that elapsed from the time Peters was taken from his cell, gave his statement, and returned to his cell was limited to one hour. [N.T. 5/14/12, at 42].

3

## B.     Procedural History

Ultimately the Commonwealth charged Defendant with the following on Bill of Information 6342-11: Count One-statutory sexual assault,[3] Count Two- involuntary deviate sexual intercourse ("IDSI")/person unconscious,[4] Count Three-IDSI/child less than 16 years of age,[5] Counts Four and Five-aggravated indecent assault,[6] and various other related offenses. On October 4, 2011, Defendant filed an Omnibus Pre-Trial Motion which included a Motion to Suppress statements he made to police on August 8, 2011. More specifically, Defendant asserted that the statement he gave to police was not voluntary. [N.T. 5/14/12, at 3].

After hearing and argument on May 14 and 15, 2012, respectively, the Court denied Defendant's Motion to Suppress by Order dated May 24, 2012. On October 16, 2012, after a one-day stipulated bench trial the Court found Defendant guilty of Count Three-involuntary deviate sexual intercourse/child less than 16 years of age.[7] [N.T. 10/16/12, at 6-11, 24]. By stipulation all other charges were withdrawn by the Commonwealth.

On August 5, 2013, the Court conducted a Sexually Violent Predator and Sentencing hearing. After reviewing the previously requested Pre-Sentence Investigation (PSI), the testimony produced by both Defendant, and the Commonwealth, including from the minor victim herself, the undersigned sentenced Defendant to undergo the mandatory term of imprisonment for not less than ten (10), nor more than twenty (20)

---

[3] 18 Pa. C.S. § 3122.1
[4] 18 Pa. C.S. § 3123(a)(3).
[5] 18 Pa. C.S. § 3123(a)(7).
[6] 18 Pa. C.S. § 3125(a)(4).
[7] 18 Pa. C.S. § 3123(a)(7).

4

years. [N.T. 8/5/13, at 59-61].[8] While the Court informed Defendant of his post-sentence rights, he filed no post-sentence motion. [N.T. 8/5/13, at 64-65]. Instead, on August 14, 2013, Defendant filed a timely Notice of Appeal challenging the imposition of his sentence. Defendant filed and served upon the undersigned the following Concise Statement of Matters Complained Of Pursuant to Pa. R.A.P. 1925(b) ("1925(b) Statement") asserting only one issue on appeal:

1. Whether the trial court erred in denying appellant's Motion to Suppress his statements because the waiver of Miranda rights was not knowing, voluntary and intelligent?

## III. DISCUSSION

The standard of review applied to claims raised on appeal after a bench trial is limited to determining whether the trial court abused its discretion or committed an error of law. *See Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. Ct. 2007). In evaluating a trial court's decision, an "abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Greer*, 951 A.2d 346, 355 (Pa. 2008) (internal citation omitted).

In reviewing the denial of a motion to suppress, the appellate court's responsibility is limited to determining whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Harrell*, 65 A.3d 420, 433 (Pa. Super. Ct. 2013) (internal citations omitted). The reviewing court will consider only the evidence of the

---

[8] Counsel agreed at the time of the stipulated bench trial that Defendant would only face the mandatory minimum if convicted. In addition, the Commonwealth agreed to withdraw all charges, with the exception of Count Three. [N.T. 8/5/13, at 59]

5

Commonwealth and so much of the evidence for the defense which, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* "When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse only if there is an error in the legal conclusions drawn from those factual findings." *Id.*

A waiver of *Miranda* rights is valid only where it is effectuated voluntarily, knowingly and intelligently. *Commonwealth v. Rushing*, 71 A.3d 939, 950 (Pa. Super. Ct. 2013). The question of voluntariness does not turn on whether a defendant would have confessed without interrogation, but rather whether the interrogation was so manipulative or coercive that it deprived that defendant of his ability to make a free and unconstrained choice. *Id.* (Court determined that placement of appellant in holding cell for three hours without shoes or socks did not constitute coercion.); *Harrell*, 65 A.3d at 433-35 (Waiver of *Miranda* rights was knowing and voluntary despite being made during four-hour interview.); *Commonwealth v. Keaton*, 45 A.3d 1050, 1068-69 (Pa. 2012) (Waiver of *Miranda* rights was knowing and voluntary despite appellant's brain damage and cognitive disorder.)

In analyzing whether a defendant's waiver of *Miranda* rights is valid, a suppression court looks to the totality of the circumstances surrounding the waiver. *Commonwealth v. Lyons*, 79 A.3d 1053, (Pa. 2013). Under the totality of the circumstances test, the following factors are considered:

> i.) the duration and means of interrogation utilized;
> ii.) the physical and psychological state of the accused;
> iii.) the conditions attendant to the detention;
> iv.) the attitude of the interrogator; and
> v.) any and all other circumstances that could diminish an accused's ability to withstand suggestion or coercion.

*See Commonwealth v. Perez*, 845 A.2d 779, 787 (Pa. 2004).

6

Defendant claims that the confluence of circumstances surrounding his confession, including his 10+ hour custodial detention, wherein he claims to have been deprived food, coupled with Det. Angelucci's suggestion that if he confessed, Det. Angelucci would get him needed "treatment" for his sexual addiction, rendered his *Miranda* waiver unknowing and involuntary. Fundamentally, Defendant's claims fail as his factual premise is contrary to this Court's findings of fact. Despite Defendant's assertions, the record demonstrates that the Commonwealth aptly met its burden of proving by a preponderance of the evidence that Defendant's waiver was knowing, voluntary, and intelligent.

First, the delay of 10½ hours between arrest and statement in this case was neither unnecessary, nor aimed at overcoming Defendant's will. As the defense readily acknowledged at argument, as a practical matter in Montgomery County, a Judge or District Justice is not on duty or available from 3:23 am, when Peters was arrested, until 8:30 am or 9:00 am when a Judge or District Justice normally becomes available—a fact of which this Court takes judicial notice. Additionally, Det. Angelucci is the only detective in the Norristown Police Department sex offenders unit and thus he had the exclusive responsibility to deal with Peters's arrest. [N.T. 5/14/12, at 47]. As acknowledged, Det. Angelucci had to both attend a Mission Kids' interview and amend the Probable Cause Affidavit to Defendant's Complaint before he could turn his attention to speaking with Defendant, at Defendant's request. [N.T. 5/14/12, at 6, 22, 30-45].

In *Commonwealth v. Perez*, 845 A.2d 779, 787 (Pa. 2004), the Pennsylvania Supreme Court re-examined and abandoned the "six hour rule," which previously rendered inadmissible *per se* pre-arraignment confessions obtained more than six hours after arrest. In its place, the Court adopted a more flexible approach, holding that

7

"[r]ather, in determining the admissibility of all statements, regardless of the time of their making, courts must consider the totality of the circumstances surrounding the confession." *Id.* at 787. Included in that analysis are considerations of "the duration and means of interrogation; the defendant's physical and psychological state; the attitude exhibited by the police during the interrogation; and any other factors which, may serve to drain one's powers of resistance to suggestion and coercion." *Id.*

The Court in *Perez* found analogous circumstances[9] to those faced by Det. Angelucci, as a reasonable explanation for the delay in interviewing the defendant, and contrary to any assertion that the delay was aimed at overcoming defendant's will. *Id.* at 789. More specifically, the Court in *Perez* countered appellant's claim that he was subjected to an unjustified delay in his interrogation by noting that the assigned detective was hamstrung by limited personnel from processing the case more expeditiously. The Court, therefore, attributed the complained-of delay to circumstances beyond police control, including the defendant's own provision of false information. *Id.* at 786-87. Similarly, in the instant case, Defendant was not confronted with any coercive tactics during this delay as he himself conceded that he slept virtually the whole time, *i.e.*, the 8 hours prior to meeting with Det. Angelucci. [N.T. 5/14/12, at 48]. In short, no facts of record exist to even suggest that the police attempted to overcome Defendant's will during the delay.

As to duration and means of interrogation, the entire session lasted but an hour, during which Defendant was un-cuffed (though still in ankle shackles), and offered food

---

[9] "The detective explained at the suppression hearing that because he was the detective assigned to the case, he alone was responsible for interviewing three suspects, including appellant, and no other detective would have done so while he was processing the crime scene, especially when they had their own assignments coming in. *Id.* at 789.

and drink. [N.T. 5/14/12, at 42]. Defendant was given and waived his *Miranda* Warnings and voluntarily gave the statement. [N.T. 5/14/12, at 10-15]. Despite his unsupported suggestion that Det. Angelucci's discussion of treatment was aimed at overcoming Defendant's will, the record demonstrates no such manipulation. [N.T. 5/14/12, at 19-62]. Instead, Det. Angelucci's brief discussion of treatment merely reflects his attitude that Defendant was in need of help.

As to the conditions attendant to the detention, Defendant was held in a cell with lavatory facilities and a sink with a water fountain, and as previously noted, Defendant was left alone sleeping virtually the entire time. [N.T. 5/14/12, at 37-48]. Finally, with regard to Defendant's physical and psychological state, the record is devoid of any adverse physical condition. This Court found Det. Angelucci's testimony credible that, aside from being embarrassed, Defendant was calm, alert, and coherent. [N.T. 5/14/12, at 19-62]. Finally, Defendant's claim as to being under the influence of drugs and/or alcohol is belied not only by Det. Angelucci's trained observation[10] that Defendant was not , but also by Defendant's own answer to the question posed in this regard that he was not.[11]

The record here demonstrates that Defendant's waiver was made with a full awareness of the nature of his *Miranda* rights, and resulted from a free and deliberate choice rather than intimidation, coercion or deception.

---

[10] [N.T. 5/14/12, at 19].
[11]"Question: Are you currently under the influence of any drugs or alcohol that would affect your memory or judgment?
Answer: No." [N.T. 5/14/12, at 59]

## IV. CONCLUSION

Accordingly, the trial court respectfully requests that the judgment of sentence imposed on Defendant, Gene Peters, on August 5, 2013, be **AFFIRMED**.

BY THE COURT:

THOMAS C. BRANCA,                    J.

Copies of the above Opinion
Mailed on:  3/ 7 /14
**By First Class Mail:**
John I. McMahon, Jr., Esquire
**By Interoffice Mail:**
Montgomery County District Attorney - Appellate Division
	Robert M. Falin, Esquire, Executive Assistant & Chief of Appeals
Deputy Court Administrator-Criminal

Secretary

10

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA        NO. 6342-11
                           :

            **v.**                    :

    **GENE PETERS**                :

## ORDER SUR: SUPPRESSION

Presently before the Court is Defendant' Motion to Suppress statements made to

members of the Norristown Police Department following his arrest on August 8, 2011.

This Court held a hearing on Defendant's Motion on May 14 and 15, 2012. Having

reviewed the applicable case law and the evidence presented, the Court enters the

following:

### I.    FINDINGS OF FACT

1. On August 8, 2011 at approximately 3:00 am, Norristown Police received a report

of a sexual assault upon a nine (9) year old girl at 928 W. Marshall St.

2. Based on information provided by the victim at the scene, the victim's uncle,

Defendant Gene Peters ("Peters") was taken into custody at 3:23 am.

3. Defendant was held in a holding cell at the Norristown Police Department which

cell had bathroom facilities and a water fountain.

4. At approximately 7:00 am on that date, Detective James Angelucci ("Det.

Angelucci") arrived at the Police Station. Det. Angelucci is the only detective in the

Norristown Police Department assigned to sex crimes. His first task that day was to

attend a Mission Kids' session.[1] Thereafter, he turned his attention to revising the

---

[1] While not testified to, this Court is aware that a Mission Kids' interview is the process by which a minor
reports his or her alleged sexual abuse.



Probable Cause Affidavit in the instant case. He was also told by Data personnel (those who check prisoners in cells) that Defendant wanted to discuss his situation with the police.

5.   At approximately 1:40 pm, Det. Angelucci brought Peters to his office based on Peters' request to speak with the police of his situation. Peters was in handcuffs and shackles for the walk from the cell to the office. Once in the office, the handcuffs were removed from Peters, though he remained in the shackles.

6.   According to his own testimony, Peters slept virtually the entire time he was in the holding cell prior to his meeting with Det. Angelucci.

7.   Moreover, while Peters testified he was given nothing to eat, Det. Angelucci testified that the Norristown Police Department policy was to give prisoners held for more than eight (8) hours something to eat. Moreover, Det. Angelucci testified that he offered Peters something to eat and drink during the course of taking Peters' statement.

8.   Peters was given his Miranda Warnings prior to any substantive discussions or questioning. Those warnings were in writing, signed by Peters, and admitted as Commonwealth Exhibit #1, appended hereto. As explained by Det. Angelucci, he told Peters, and wrote on the form, that he wanted to talk to Peters about an alleged sexual assault at Peters' home at 928 W. Marshall St. Det. Angelucci followed his set procedure by reading aloud to Peters the sentence numbered 1 on the form, advising Peters of "my right to remain silent and that anything can and will be used against me in a court of law." Det. Angelucci then asked Peters to read it aloud back to Det. Angelucci, so he could assure himself that Peters could read.

2

9. After Peters read #1 from the form, Det. Angelucci told Peters to read to himself the remainder of the form which Peters appeared to do, at which point Peters wrote 'yes' on the form in response to the question inquiring whether Peters understood his Constitutional Rights and knowing them, was willing to voluntarily give a statement at 1:43 pm.

In addition to Det. Angelucci, Sergeant Crescitelli ("Sgt Crescitalli") was also present for the giving of the Miranda Warnings. Det. Angelucci and Sgt Crescitelli witnessed Peters' signature to his waiver of Miranda Warnings.

10. At the hearing, Peters acknowledged that he was given his Miranda Warnings and signed the form that he understood his rights and was willing to give a statement.

11. Upon completion of the waiver of his Miranda Rights, Peters and Det. Angelucci had a discussion about the events at his house with the minor child L.M. Thereafter, Det. Angelucci proceeded to a question and answer session during which he contemporaneously recorded on his computer the questions and answers. The statement in which Peters admits to sexually assaulting L.M. was introduced as Commonwealth's Exhibit #2 (also appended hereto). It is this statement that Peters seeks to suppress.

12. Peters did not deny giving the statement or the accuracy of the statement, but asserted that he was high, having smoked marijuana and PCP most of the day before he was arrested, and that he was promised leniency and treatment for his sexual addictions if he gave a statement.

13. Contrary to Peters' testimony however, Det. Angelucci, who has extensive experience with individuals under the influence of drugs, testified that Peters did not appear to be under the influence of drugs or alcohol and while he would characterize

3

Peters as embarrassed, Peters remained calm the whole time they were together. Moreover, Peters was recently paroled on a sexual assault case, and while he discussed with Peters the need for treatment for sexual addiction as reflected in the statement, Det. Angelucci made no promises or threats to Peters to induce him to give a statement.

14. This Court finds Det. Angelucci to be credible in all aspects of his testimony and Peters not credible to the limited extent Peters' testimony contradicts that of Det. Angelucci.

15. The time that elapsed between Peters' arrest and the giving of his statement was approximately 10½ hours, during which Peters was not arraigned.

16. The entire time that elapsed from the time Peters was taken from his cell, gave his statement, and returned to his cell was one hour.

## II. CONCLUSIONS OF LAW

1. In *Commonwealth v. Perez*, 845 A.2d 779 (Pa. 2004), the Pennsylvania Supreme Court re-examined the "six hour rule" which calls for suppression of a pre-arraignment confession if obtained more than six hours after arrest and held that "voluntary statements by an accused, given more than six hours after arrest when the accused has not been arraigned, are no longer inadmissible *per se*." *Id.* at 787.

2. In its place, the Court held that in determining the admissibility of all statements, the Court must consider the totality of the circumstances. Included in that analysis are considerations of "the duration and means of interrogation; the defendant's physical and psychological state; the attitude exhibited by the police during the interrogation; and any other factors which, may serve to drain one's powers of resistance to suggestion and coercion." *Id.*

4

3. The delay of 10½ hours between arrest and statement in this case was neither unnecessary, nor aimed at overcoming Peters' will. As the defense acknowledged at argument, as a practical matter in Montgomery County, a Judge or District Justice is not on duty or available from 3:23 am, when Peters was arrested, until 8:30 am or 9:00 am when a Judge or District Justice normally becomes available. Additionally, Det. Angelucci is the only detective in the Norristown Police Department sex offenders unit and thus he had the exclusive responsibility to deal with Peters' arrest. Det. Angelucci had to attend a Mission Kids' interview and amend the Probable Cause Affidavit to Peters' Complaint before he could turn his attention to speaking with Peters, who had already requested to talk to the police. The *Perez* court found analogous circumstances by the detective in that case as reasonable explanation for the delay in interviewing the defendant, and contrary to any assertion that the delay was aimed at overcoming defendant's will. *Id.* at 789. Finally, there were certainly no coercive tactics during this delay as Peters' himself testified that he slept virtually the whole time, *i.e.*, the 10½ hours prior to meeting with Det. Angelucci.

4. As to duration and means of interrogation, the entire session lasted but an hour, during which Defendant was un-cuffed (though still in ankle shackles), and offered food and drink. Peters was given and waived his Miranda Warnings and voluntarily gave the statement. He did not testify as to any coercive tactics, and while no promises were made, the discussion of treatment exhibited an attitude by Det. Angelucci that Peters was in need of help. Certainly, there are no factors of record to even suggest that the police attempted to overcome Peters' will during the delay.

5

5. As to the conditions attendant to the detention, Peters was held in a cell with lavatory facilities and a sink with a water fountain, and as previously noted, Peters was left alone sleeping virtually the entire time.

6. Finally, as to Peters' physical and psychological state, the record is devoid of any adverse physical condition. As to Peters' claim that he was high on drugs, besides the fact that he was in custody for 10½ hours during which he slept, Det. Angelucci, who has extensive experience with drug users, credibly testified that Peters did not display any such adverse effects, a fact also born out by Peters' reading, understanding, and signing his Miranda Warnings. As to Peter's psychological condition, this Court found Det. Angelucci's testimony credible that, aside from being embarrassed, Peters was calm, alert, and coherent.

Accordingly, based on all of the above the Court enters the following:

## ORDER

AND NOW, this 24 day of May 2012, upon consideration of Defendant's Motion to Suppress and after hearing, it is hereby **ORDERED** that said Motion is **DENIED**.

BY THE COURT:

THOMAS C. BRANCA,                    J.

Copies of the above Order
Mailed on 5/24 /12:
By First Class Mail:
John I. McMahon, Jr., Esquire
By Interoffice Mail to:
Matthew Quigg, Esquire, Montgomery County District Attorney's Office
Deputy Court Administrator-Criminal

Secretary

6

# NORRISTOWN POLICE DEPARTMENT
235 E. Airy Street
Norristown, Pennsylvania 19401

Russell J. Bono
Chief of Police

TELEPHONE: (610) 270-0474
FAX: (610) 272-5134

## MIRANDA WARNING

I, _Gene Peters_ acknowledge that my Constitutional warnings were

given to me by _Det. Angelucci_ following my arrest or detention, but preceding

any questioning of me concerning _An incident that occurred At_
I have been advised: _928 W. Marshall St. 8/8/11 Regarding a Sexual Assault_

*1. Of my right to remain silent and that anything I say can and will be used against me in a court of law;*

*2. That, I have the right to talk to a lawyer before I am questioned and to have that lawyer present during questioning,*

*3. That, if I cannot afford an attorney, one will be provided to me without cost prior to any questioning,*

*4. That, during questioning, I have the right to refuse to answer any questions and that I may stop talking anytime I wish.*

Q. Do you understand your Constitutional Rights that were read and explained to you?

A. _Yes_

Q. With these Constitutional Rights in mind, are you willing to talk with us and give us a voluntary statement?

A. _Yes_

_____    _8/8/2011 1343_    _____
Signature of person advised         Date and Time              Signature of Witness

_____
Signature of advising Officer,

Where the subject advised is a juvenile:

I, _____ , acknowledge that I have been allowed to speak with the juvenile
   Parent / Guardian / other Interested Adult
for at least 5 minutes and that I have also been made aware of the above Rights, and that they have
been explained to my satisfaction, by the advising officer.

_____    _____
Signature of Parent / Guardian / other Interested Adult        Date / Time

C-1

# NORRISTOWN POLICE DEPARTMENT
# INVESTIGATIVE INTERVIEW RECORD

| | | | CASE NO. 11-6128 |
|---|---|---|---|
| | | | INTERVIEWER Detective Angelucci |

| NAME | | AGE | RACE | DOB |
|---|---|---|---|---|
| Gene Xenia Peters Jr. | | 24 | B/N | 6/11/1987 |

| ADDRESS | APT. NO. | PHONE |
|---|---|---|
| 928 W. Marshall St. Norristown | | |

| NAME OF EMPLOYMENT/SCHOOL | SOCIAL SECURITY NUMBER |
|---|---|
| GNC Trash Company | 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 |

| ADDRESS OF EMPLOYMENT/SCHOOL | PHONE |
|---|---|
| | |

| NAME OF RELATIVE OR FRIEND | PHONE |
|---|---|
| | |

| ADDRESS OF RELATIVE OR FRIEND |
|---|
| |

| PLACE OF INTERVIEW | DATE AND TIME |
|---|---|
| Norristown Police Department (detectives) | 8/08/2011 1340 |

| BROUGHT IN BY | DATE AND TIME |
|---|---|
| Sgt. Tims | 8/8/2011 |

| WARNINGS GIVEN BY | DATE AND TIME |
|---|---|
| Detective Angelucci | 8/08/2011 1345 |

My name is Detective Angelucci I'm with the Norristown Police Department. This statement is regarding an sexual assault that occurred at 928 W. Marshall St

Q: Is it okay to ask you some questions?
A. Yes

Q. Are you currently under the influence of any drugs or alcohol that would affect your memory or judgement?
A. No

Q. How far did you go in school?
A 12th grade and some college

Q. Do you read and understand the English language?
A. yes

Q. Have you read and do you understand your Miranda Warnings?
A. Yes

Q. Have I just read you your charges regarding a sexual assault?
A. yes

Q. How long have you been living at 928 W. Marshall St?
A. About two and half months since I came home.

Q. What were you in prison for?
A. Sexual assault

| SIGNATURE OF PERSON INTERVIEWED | DATE 8/8/11 | DETECTIVE |
|---|---|---|

C-2

**NORRISTOWN POLICE DEPARTMENT**
**INVESTIGATIVE INTERVIEW RECORD**

**CONTINUATION FORM**

NAME

CASE NO.

PAGE NO.
2

Q. Do you have a sexual problem or addiction?
A. Yes

Q. Do you know Liberty Ann Meter?
A. Yes, she is my best friends child my niece she calls me uncle Gene

Q. How would you catagorize your relationship with Liberty?
A. were really close we talk all the time. I take care of her.

Q. Last night did you have physically contact?
A. I touched her with my hands.

Q. Did you have your penis out of your pants?
A. yes

Q. Where did you touch her?
A. On her butt.

Q. Where were you when you had physical contact with Liberty?
A. In the living room.

Q. Did you use any type of lotion?
A. that was aloe she had sunburn. I put it on when she got out of the shower. I put it on her chest and arms.

Q. Did you penetrate her with your fingers?
A. I might have stuck my finger down there.

Q. Did you place your penis in Liberty Ann's anus?
A. Yes I did I'm sorry.

Q. What happened can you tell me what happen?
A. We all sleep in the living room. I woke up around twelve I was watching TV the whole thing started popping into my head.

Q. Where was Liberty sleeping?
A. Right next to me on the ground. I don't know something just snapped. I used my own spit to lubricate my dick. I put it in her for about a half a minute and then I just stood in the door beating myself up over it. She woke up and she looked at me.

SIGNATURE OF PERSON INTERVIEWED

DATE 8/8/11

DETECTIVE

Q. What did you say to her?
A. She got up and went to the bathroom. I asked her if she had worms. She said that she was ok. We just talked about stuff food and I was going to get a cell phone.

Q. Did you ejaculate on during this?
A. After she went upstairs I did in my hand and I went to the bathroom and washed them.

Q. Did you ever touched Liberty in a sexual way before this incident?
A. No

Q. Do you have sexual urges that you can't control?
A. yes

Q. How long have you been having these urges?
A. Since I came home. The classes made it worse. Hearing what everyone else did.

Q. Are you willing to accept treatment?
A. Yes

Q. Where did you believe that you got the idea to do this?
A. It made me wonder what type of pleasure they got out of it and I wanted to try it.

Q. Are you sorry for what you have done?
A. Yes

Q. Have you provided us with this written statement voluntarily?
A. Yes

Q. Have you been threatened or promised anything in order to give this statement?
A. No

Q. Is there anything that you would like to add to this statement that you think I might have missed?
A. I just want to be able to apologize to the family. Im really truly truly sorry. I need to get help to better myself

Q. Is everything you have stated true to the best of your knowledge?
A. Yes

Q. Are you aware that it is against the law to lie in this statement and that if it is discovered that you have lied you will be arrested and subject to the penalties of Section 4904 of the Pennsylvania Crimes Code (18 PA. C.S.4904)

| SIGNATURE OF PERSON INTERVIEWED | DATE 8/8/11 | DETECTIVE 187 |

| NORRISTOWN POLICE DEPARTMENT INVESTIGATIVE INTERVIEW RECORD | CONTINUATION FORM | |
|---|---|---|
| NAME | CASE NO. | PAGE NO. 4 |

and relating to unsworn falsification to authorities.

A. Yes

Q Have you been given an opportunity to read, review and make any changes to your statement?

A. yes GK

| SIGNATURE OF PERSON INTERVIEWED | DATE 8/8/11 | DETECTIVE 188 |
|---|---|---|